**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                          |   |                           |
|--------------------------|---|---------------------------|
| VINCENT WILLIAMS,        | : | Civil No. 04-3012 (JBS)   |
|                          | : |                           |
| Petitioner,              | : |                           |
|                          | : |                           |
| v.                       | : | **O P I N I O N**         |
|                          | : |                           |
| ROY L. HENDRICKS, et al.,| : |                           |
|                          | : |                           |
| Respondents.             | : |                           |
|                          | : |                           |

---

**APPEARANCES:**

Vincent Williams, <u>Pro Se</u>
#245684/284523B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Laurie A. Corson
Camden County Prosecutor's Office
25 North Fifth Street
Camden, NJ 08102
Attorney for Respondents

**SIMANDLE, District Judge**

Petitioner, Vincent Williams, filed the within petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Respondents have filed an Answer. The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

## BACKGROUND

1.   Factual Background

The facts of this case were recounted below and this Court,
affording the state court's factual determinations the
appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply
reproduce the Appellate Division's factual recitation:

> At approximately 8:30 p.m. on the evening of June
> 25, 1996, Tae Kyun No and his wife, Hae Suk No, were
> closing their grocery store at 1448 Haddon Avenue in
> Camden, accompanied by their employee, Brian Sherman.
> While Mr. No and Mr. Sherman were locking the store's
> steel shutters, Mrs. No walked towards their van,
> carrying the day's receipts of approximately $1,300 in
> cash in a paper bag, along with a .38 caliber handgun
> in her pants' pocket.
>
> While Mrs. No was climbing into the front
> passenger seat of the van, the van door was forced open
> by a tall black male, later identified as defendant,
> brandishing a silver handgun.  Defendant forced Mrs. No
> down, pointed the handgun at her and demanded the
> money.  Defendant's shorter accomplice, also
> brandishing a silver handgun, pointed his weapon at Mr.
> No and Mr. Sherman, who were then at the rear of the
> van and forced them to lie face-down on the ground.
> After obtaining the cash and the handgun from Mrs. No,
> both robbers fled the scene on foot.
>
> When the police arrived at the scene, Mr. Sherman,
> also a black male, described the robbers as two black
> males, one taller and the other shorter.  Mr. Sherman
> described the taller male as approximately six-feet
> tall, wearing green shorts and a green "hoody;" he
> described the other robber as light-skinned,
> approximately five-feet, six or seven inches tall,
> wearing a gray jogging suit.
>
> On July 9, 1996, Mr. Sherman was shown a photo
> array by Detective Finneman; Mr. Sherman picked out
> defendant's photograph as the taller of the robbers.
> At trial, Mr. Sherman identified defendant as someone
> who "resemble[d]" the taller robber, but whose hair was

more groomed and who had gained a "whole lot more weight" and stated that he was "not sure."

   On July 9, 1976 [sic], Mr. No was also shown an array of photographs by Detective Finneman, and Mr. No identified the photograph of defendant as the taller of the robbers.  Detective Finneman testified that defendant's photograph was placed in different positions in each of the arrays shown to Mr. Sherman and Mr. No.  At trial, Mr. No identified defendant as the taller robber who had pointed the handgun at his wife and taken the money and her gun.

   At trial, Mrs. No was unable to identify defendant as one of the robbers.

(R25;[1] State v. Brooks,[2] A-4395-98T4 (Aug. 24, 2000), pp. 2-4).

## 2.   Procedural History

On August 7, 1997, a Camden County Grand Jury indicted Petitioner on five counts, including: robbery, contrary to N.J.S.A. 2C:15-1 (count one); possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4a (count two); and three counts of aggravated assault, contrary to N.J.S.A. 2C:12-1b(4)(counts three, four, and five).

On April 28 and 29, 1998, Petitioner was tried by jury in Superior Court of New Jersey, Law Division, Camden County ("Law Division").  The jury found the petitioner guilty on all counts. On June 12, 1998, after denying Petitioner's motion for a new trial, Petitioner was sentenced pursuant to an extended term to an aggregate sentence of 58 years imprisonment with 23 years of

---

[1]  "Ra" refers to Respondents' Appendix.

[2]  Petitioner also goes by the name of "Brian Brooks."

3

parole ineligibility, to be served consecutive to a sentence Petitioner was already serving.

Petitioner filed an appeal, and his conviction and sentence were affirmed on August 24, 2000 by the Superior Court of New Jersey, Appellate Division ("Appellate Division").  On January 3, 2001, the New Jersey Supreme Court denied Petitioner's petition for certification.

On December 26, 2001, Petitioner filed a petition for post-conviction relief ("PCR").  On March 8, 2002, after an evidentiary hearing, the petition was denied by the Law Division. On August 18, 2003, the Appellate Division affirmed the denial. On January 21, 2004, the New Jersey Supreme Court denied certification.

The instant petition was submitted on June 23, 2004, and filed on June 24, 2004.  On July 9, 2004, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On September 24, 2004, Respondents filed a motion to dismiss.  On March 11, 2005, this Court denied the motion to dismiss and ordered Respondents to file an Answer.  On May 13, 2005, Respondents filed an Answer and the state court record.  On August 10, 2005 and October 17, 2005, Petitioner filed objections to the Answer.

**DISCUSSION**

**A.   Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

1.   Ineffective assistance of trial counsel.
2.   Trial court's denial of motion for new trial denied Petitioner due process and a fair trial.
3.   Trial court erred when it failed to <u>sua</u> <u>sponte</u> reinstruct jury on issue of identification.
4.   Ineffective assistance of appellate counsel.
5.   Petitioner's sentence was excessive, and was based upon facts neither admitted by him, nor found by the jury. (Asserted in amended petition filed on November 19, 2004, docket entry 10).

<u>See</u> Petition for Writ of Habeas Corpus, ¶ 12; motion to amend.

Petitioner has raised the instant claims before the New Jersey state courts.  Therefore, they are properly before this Court for a decision on the merits.  <u>See</u> 28 U.S.C. § 2254(b)(1).

**B.   Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u>

5

<u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert.</u> <u>denied</u> 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(citing <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id.</u> A federal court may grant the writ under the "unreasonable

application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).  In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.  See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the

state court." Id.; see also 28 U.S.C. § 2254(e)(1).  The Court

of Appeals for the Third Circuit has ruled that this presumption

of correctness can be overcome only by clear and convincing

evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.

2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-

supported and subject to the presumption of correctness is not

unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan,

156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from

revisiting credibility determinations as "it would be wholly

inappropriate for a federal court to repastinate soil already

thoroughly plowed and delve into the veracity of the witnesses on

habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir.

2001).  A habeas petitioner therefore "must clear a high hurdle

before a federal court will set aside any of the state court's

factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98

(1st Cir. 2001).

A pro se pleading is held to less stringent standards than

more formal pleadings drafted by lawyers.  See Estelle v. Gamble,

429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

(1972).  A pro se habeas petition and any supporting submissions

must be construed liberally and with a measure of tolerance.  See

Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v.

Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United

States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## C.    Petitioner's Claims Regarding Ineffective Assistance of Counsel (Grounds 1 and 4).

Petitioner claims that his trial counsel was ineffective because "counsel failed to investigate or call witnesses favorable for [Petitioner's] defense.  They would have challenged the reliability of identification."  (Petition, ¶12A). Petitioner argues that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on appeal.  (Petition, ¶12D).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense."  Id. at 687.  In order to establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  State v. Fritz , 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was

9

reasonable considering all the circumstances." Strickland, 466

U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time. Because
> of the difficulties inherent in making the evaluation,
> a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519

U.S. 1020 (1996).

The Supreme Court has held that the Due Process Clause of

the Fourteenth Amendment guarantees a defendant the effective

assistance of counsel on a first direct appeal as of right.

Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective

assistance of appellate counsel are evaluated under the

Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d

Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa.

July 26, 2004).  Appellate counsel does not have a duty to

advance every nonfrivolous argument that could be made, see Jones

v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal. See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Petitioner raised the issue of ineffective counsel in the state courts in a petition for post-conviction relief ("PCR"). The Law Division held an evidentiary hearing and denied Petitioner's PCR petition.  The Appellate Division, in affirming the decision of the Law Division, summarized the evidentiary hearing as follows:

> In his petition seeking post-conviction relief, defendant contended he had been provided ineffective assistance of trial counsel based upon the failure to call, as witnesses, Niema Brooks and Latina Akins, who allegedly had been made known to defense counsel and who would have provided relevant testimony on the issue of identification.  Defendant also alleged he had been denied the effective assistance of appellate counsel based upon the failure of appellate counsel to raise, on appeal, the issue of trial counsel's

11

ineffectiveness.  Defendant's PCR petition was
supported by the certifications of defendant, Latina
Akins, and Niema Brooks.

On March 8, 2002, an evidential hearing was
conducted in the Law Division before Judge Baxter on
the issues raised in defendant's PCR petition.
Defendant, Niema Brooks, Latina Akins, and defendant's
trial counsel, Marcia Soast, Esq., all testified at
that hearing.

Niema Brooks, defendant's cousin, testified that
she, defendant and Latina Akins had been frequent
customers of the store of Mr. and Mrs. No located at
1448 Haddon Avenue.  Ms. Brooks stated that she had
informed defendant that the store had been robbed and,
on several occasions subsequent to the robber, she and
defendant had entered the store, purchased items, and
chatted briefly with Mr. and Mrs. No.  However, Ms.
Brooks testified that at no time did Mr. or Mrs. No
identify defendant as one of the perpetrators of the
robbery or otherwise treat him in any manner other than
as a customer.  Both Ms. Brooks and Ms. Akins testified
they had been available and willing to testify at
defendant's trial.

Defendant testified that prior to trial he had
provided his attorney, Ms. Soast, with the names of Ms.
Akins and Ms. Brooks and their proposed testimony, but
that she had failed to call them as witnesses.
Defendant produced a copy of a letter addressed to Ms.
Soast dated November 25, 1997, informing counsel of the
availability of Ms. Brooks and Ms. Akins as witnesses
on the issue of identification.  Defendant
acknowledged, however, that he had received no response
to the letter from Ms. Soast.

Ms. Soast testified that defendant never informed
her of the existence of Ms. Brooks or Ms. Akins, and
that she had not received the letter dated November 25,
1997, produced by defendant.  Additionally, Ms. Soast
stated she could recall no conversation with defendant
concerning the existence of any witnesses.

(Ra47; State v. Brooks, A-5470-01T4 (Aug. 18, 2003), pp. 4-6).

The Appellate Division affirmed the denial of PCR "substantially

for the reasons articulated by Judge Baxter in her oral opinion delivered on March 8, 2002." (Ra47 at p. 10). The Appellate Division block quoted a large portion of Judge Baxter's oral opinion in its decision. (Ra47 at pp. 6-10).

Judge Baxter, of the Law Division, assessed the credibility of the witnesses and found that Petitioner was not truthful when he said he sent a letter to his attorney regarding the witnesses; that Petitioner's attorney, Ms. Soast was a credible witness; that because the witnesses' names were not given to Ms. Soast, she was not ineffective in not pursuing the witnesses; that Ms. Soast was effective as trial counsel. (Rta4[3] at pp. 117-129). Judge Baxter specifically employed the Strickland standard in making her decision. (Rta4 at pp. 117-118). Without reaching the second prong of Strickland, Judge Baxter found that Petitioner did not meet the requirements of the first prong-- that counsel's performance was deficient. (Rta4 at p. 128). The Appellate Division found that Judge Baxter's conclusions were "fully supported by substantial, credible evidence contained in the record." (Ra 47 at p. 10).

As the state court held an evidentiary hearing, took testimony from witnesses, assessed the credibility of those witnesses, utilized the Strickland standard, and made an informed

---

[3]  Rta refers to transcripts provided by Respondents in their appendix.  Rta4 is the transcript of the Post-Conviction Relief hearing dated March 8, 2002.

decision supported by the record before it, this Court finds no
constitutional violation to warrant habeas relief.  Petitioner
has not demonstrated that the state courts unreasonably
misapplied the facts of the case.  A review of the record of the
trial and the PCR hearing reveal that Petitioner's attorney was
effective and was a strong advocate for her client, presenting to
the jury the inconsistencies in the identifications of
Petitioner, and pursuing appropriate defenses.

        With regard to Petitioner's argument that he did not receive
effective assistance of appellate counsel on direct appeal, the
Court has found that the issues underlying this claim are without
merit, and that trial counsel was not ineffective, so it follows
that appellate counsel was also not ineffective.  Further,
Petitioner has failed to show that appellate counsel's
performance was substandard, or that his appeal would have had a
different result had counsel performed differently.  The Court
also notes that the issue of ineffective assistance of counsel is
one for the PCR court.  Had Petitioner's appellate counsel raised
the issue on direct appeal, it is likely that the Appellate
Division would have declined to address the merits of the claim
because the legal issues required a consideration of facts not
contained in the record.

        Thus, as the state courts applied the correct <u>Strickland</u>
standard to Petitioner's claims and reasonably applied the facts,

14

Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  These grounds for a writ of habeas corpus, are therefore denied.

D.   **Denial of Motion for New Trial (Ground 2).**

Petitioner argues that the trial judge erred in denying his motion for a new trial- in essence, Petitioner is claiming that the verdicts were against the weight of the evidence. Summarizing the arguments of the parties, the trial judge reviewed the evidence and stated:

> The defendant contends that the jury verdict constituted a miscarriage of justice because it was contrary to the weight of the credible evidence. The defendant maintains that the in-court identifications of him were insufficient to link him to the scene of the crime.  In particular, the defendant argues that the witnesses had insufficient time and inadequate opportunity to accurately view the perpetrator.  The incident took no more than two or three minutes and the witnesses were lying on the ground listening to the demands of the shorter man whose name was not known. There were apparently two robbers acting as accomplices.
>
> In addition, the defendant notes that the police report described the robber as six foot five- or, that is six feet, five inches tall.  However, the defendant was measured at the time of trial and is only six feet tall.  Therefore, there is a difference of five inches.

15

The State refutes the contention that the jury verdict was against the weight of the evidence at trial.  Two witnesses were able to identify the witness as the robber.  Despite the fact that the defendant had gained 30 pounds and changed his hair style since the incident.

In addition, the State notes there were several reasons adduced at trial for the discrepancy between the robber's height as noted on the police report as six foot five and the defendant's actual height of six feet zero inches.  For example, it could have been a clerical error by the police officer or a distortion by the witnesses who were viewing the robber from ground level.

(Rta3, pp. 5-6).

In denying Petitioner's motion for a new trial, the trial judge stated:

The defendant has not clearly and convincingly demonstrated a manifest injustice.  Unquestionably, the identification of the robber was an issue for the jury to resolve at trial.  The State presented two witnesses who identified the defendant as a robber both in a photo array and in court.  They made an in-court identification as well.  In addition, the State presented to the jury several theories for discrepancies in the identification of the defendant.  Ultimately, the jury, as it is obliged to do so, did resolve the facts and ultimately the jury found the State's proofs to be beyond a reasonable doubt.

Moreover, this Court carefully instructed the jury on the applicable law.  In particular, the Court cautiously advised the jury as to the State's burden.  Thus, there is no indication that the defendant was convicted on anything less than proof beyond a reasonable doubt.

(Rta3, pp. 6-7).  The Appellate Division examined this claim on direct appeal and held, "we are in substantial agreement with the oral opinion articulated by [the trial judge] on June 12, 1998 in

denying defendant's motion for a new trial."  The Appellate
Division went on to explain:

> The identification testimony of Mr. Sherman and
> Mr. No, if believed by the jury, was sufficient to
> sustain the verdicts.  While the identifications were
> challenged and certain inconsistencies brought to the
> attention of the jury, it was still within the province
> of the jury to resolve the credibility issues.  While
> there were some inconsistencies in the evidence
> presented to the jury on the issue of identification,
> the charge given by the judge on identification was
> fair and provided the jurors with appropriate
> guidelines for evaluating the credibility of the
> evidence.  It is generally not within the province of
> the judge to comment on the strength or weaknesses of
> the State's identification evidence.  ...  Obviously,
> the jury concluded that the testimony of the victims
> identifying defendant as one of the robbers was
> credible.

(Ra25, pp. 6-7)(internal citations omitted).

A claim that the jury's verdict was against the weight of
the evidence is "essentially a matter of state law, and does not
raise a federal constitutional question unless the record is
completely devoid of evidentiary support in violation of
Petitioner's due process."  Douglas v. Hendricks, 236 F. Supp.2d
412, 435-36 (D.N.J. 2002)(Walls, J.)(citation omitted).  Only
where, "after viewing the evidence in the light most favorable to
the prosecution, [no] rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt" should
the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).
This standard must be applied "with explicit reference to the
elements of the criminal offense as defined by state law."

Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123
F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As
noted above, state court factual determinations are presumed to
be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir.
2000).

In this case, as the state courts point out, there was
evidentiary support for the verdicts.  The identification
evidence was placed before the jury for the jury to assess the
reliability of that evidence.  Both the strong and weak points of
the identifications were presented to the jury.  That the jury
decided to accept the State's evidence and argument and find that
the identification evidence pointed to Petitioner as the
perpetrator does not rise to the level of a constitutional due
process violation.

Further, Petitioner has not shown, as required by 28 U.S.C.
§ 2254(d), that the actions of the state courts "resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States," or "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  This ground for a writ of habeas corpus, is
therefore denied.

E.   **Jury Instruction Claim (Ground 3)**.

Petitioner argues that the trial judge erred in not re-instructing the jury, <u>sua sponte</u>, with the identification charge after the jury presented various questions to the trial judge during deliberations concerning the identification of Petitioner.

During the trial court's instruction to the jury, the judge instructed on identification, stating:

> Now, my next instruction to you, ladies and
> gentlemen, concerns the issue of identification.  In
> other words, the criteria that you should use and some
> general thoughts and observations on that issue.  The
> defendant as part of his general denial of guilt
> contends that the State has not presented sufficient
> reliable evidence to establish beyond a reasonable
> doubt that he is the person who committed the alleged
> offense.  Where the identity of the person who
> committed the crime is in issue, then the burden of
> proving that identity is upon the State.  The State
> must prove beyond a reasonable doubt that this
> defendant is the person who committed the crime.  In
> other words, the State must prove beyond a reasonable
> doubt that this defendant is the taller man that was
> described to you.  The defendant has neither the burden
> nor the duty to show that the crime, if committed, was
> committed by someone else nor does the defendant have
> any responsibility to prove the identity of that other
> person. ...  In order to meet its burden with respect
> to the identification of the culprit, the State has
> presented the testimony of the witnesses Brian Sherman
> and Mr. No.  You will recall that these witnesses
> identified the defendant in court as the person who
> committed the offense.  In actuality, Mr. Sherman said
> that [defendant] resembled th person who committed the
> offense.  According to both Mr. Sherman and Mr. No, his
> identification of the defendant in court is based upon
> the observations and perceptions which he made of the
> defendant on the scene at the time the offense was
> being committed.  It is your function as members of
> this jury to determine what weight, if any, to give to
> this identification testimony.  You must decide whether
> it is sufficiently reliable evidence on which to

conclude that this defendant is the person who committed the offense or offenses charged.  In going about your task, you should consider the testimony of the witness in the light of the customary criteria concerning credibility as I have explained them to you. It is particularly appropriate that you consider the capacity or the ability of the witness to make observations or perception[s] as you gauge it to be and you should also consider the opportunity which the witness had at the time and under all of the attendant circumstances for seeing that which he says he saw or that which he says he perceived with regard to his identification of the person who committed the alleged offense. ... Thus, the ultimate issue of the trustworthiness of an in court or out of court identification is for you to decide.

(Rta2, pp. 51-53).

The jury submitted the following questions to the judge during deliberations:

When Mr. Sherman and Mr. No picked out the pictures, were they separate?  i.e., were they independent?

Were Mr. Sherman and Mr. No allowed to communicate after Mr. No identified the suspect['] s picture?

How were the pictures and how many [were] selected?

(Rta2, p. 85).

The trial judge, after conferring with and getting the consent of counsel replied:

The answer[s] to these particular questions were not the subject of any testimony during the trial and we cannot augment or add to the testimony by supplying answers to you so you have to decide the case based on the evidence that you did hear.  I should also remind you that you should not speculate or conjecture as to what the answers might be as to these questions.

(Rta2, p. 86).

20

The Appellate Division reviewed this claim on direct appeal under the plain error standard, and held:

> We are satisfied there was no error and that the judge's responses to the questions were appropriate. The jury focused on areas that were not the subject of questioning by counsel. It was, however, apparent from the testimony of Detective Finneman that Mr. No and Mr. Sherman identified defendant from different photo arrays, because defendant's photo was placed in a different position in each array. There was no need for the judge to recharge the jury on the issues of identification or burden of proof, particularly when there was no request by defendant. The charges given were fully appropriate.

(Ra25 at p. 9).

Challenges to jury instructions solely as in error under state law do not state a claim cognizable in federal habeas corpus proceedings. See Engle v. Isaac, 456 U.S. 107 (1982); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.)("Questions concerning instructions are normally matters of state law and are not cognizable in federal habeas corpus review."). The finding by the state appeals court should be "the end of the matter of possible error based on the measuring of the evidence against the state law because state, not federal, courts decide these things." Morgan v. Krenke, 232 F.3d 562, 567 (7th Cir. 2000), cert. denied, 532 U.S. 951 (2001).

Federal courts will evaluate jury instructions in the context of the overall charge to the jury as a component of the

entire trial process.  See Estelle v. McGuire, 502 U.S. 62 (1991); Cupp v. Naughten, 414 U.S. 141, 146 (1973); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); United States ex rel. Harding v. Marks, 541 F.2d 402, 405 (3d Cir. 1976).  The court will then determine whether the ailing instructions so infected the entire trial so that the resulting conviction violated due process rendering the trial fundamentally unfair.  See Estelle, 502 U.S. at 71.  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997); see also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  See Smith, 120 F.3d at 416-17; see also Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so,

the error cannot be deemed harmless." Id. at 418 (citing

California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a

challenged instruction:

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437(2004) (internal quotations

and citations omitted).

In the instant case, the Court finds that the jury

instructions did not result in a fundamentally unfair trial or a

violation of Petitioner's due process rights.  Evidence at trial

consisted of various witnesses' testimony, the credibility of

which was to be weighed by the jury.  There is no indication that

the jury misapplied the identification instruction; rather, the

jury made a credibility determination to believe the state

witness' testimony over Petitioner's defenses, and to find

Petitioner guilty.  Further, as explained by the Appellate

Division, the trial judge's charges were adequate and proper.

However, even if the charge was improper, which neither the state

courts nor this Court finds, any error would be considered

harmless in that it did not have a substantial effect on the

verdict.

Thus, Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**F.    Sentencing Claim (Raised in Amended Petition).**

Petitioner argues in his amended petition that his sentence was excessive.  He states that the sentencing judge gave him an enhanced sentenced based upon aggravating factors not found by the jury, nor admitted by him.  Petitioner cites as support for his argument Blakely v. Washington, 542 U.S. 296 (2004), Apprendi v. New Jersey, 503 U.S. 466 (2000), and United States v. Booker, 543 U.S. 220 (2005).

To begin, a federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O' Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court

of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also  28
U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991);
Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

"The Eighth Amendment, which forbids cruel and unusual
punishments, contains a 'narrow proportionality principle' that
'applies to noncapital sentences.'"  Ewing v. California, 538
U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has
identified three factors that may be relevant to a determination
of whether a sentence is so disproportionate to the crime
committed that it violates the Eighth Amendment:  "(1) the
gravity of the offense and the harshness of the penalty; (ii) the
sentences imposed on other criminals in the same jurisdiction;
and (iii) the sentences imposed for commission of the same crime
in other jurisdictions."  Solem v. Helm, 463 U.S. 277, 292
(1983).

Here, any sentencing error that may have occurred is a
matter of state law and does not rise to a level of
disproportionality that violates the Eighth Amendment.
Additionally, the decisions cited by Petitioner are not
retroactively applicable to cases on collateral review.  See
generally In re Olopade, 403 F.3d 159 (3d Cir. 2005) (finding
that the decision of the Supreme Court in Booker does not apply
retroactively to cases on collateral review); Lloyd v. United
States, 407 F.3d 608 (3d Cir. 2005) (same); United States v.

25

Swinton, 333 F.3d 481 (3d Cir. 2003) (holding that Apprendi does
not apply retroactively to cases on collateral review); In re
Turner, 267 F.3d 225 (3d Cir. 2001) (same).  See also United
States v. Price, 400 F.3d 844, 849 (10th Cir. 2005) (Blakely does
not apply retroactively to cases on collateral review).

As the sentencing issue raised by Petitioner is a matter of
state law, and because the Court finds no constitutional
violation, this claim must be denied.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Petition for a Writ of Habeas
Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court
further finds that no certificate of appealability will issue
because Petitioner has not made a substantial showing of the
denial of a constitutional right, as required by 28 U.S.C. §
2253.

An appropriate Order accompanies this Opinion.


                    **s/ Jerome B. Simandle**
                     JEROME B. SIMANDLE
                  United States District Judge

Dated:  **February 14, 2006**